# UNITED STATES *v.* MESCALL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NEW YORK.

No. 278. Argued October 14, 1909.—Decided November 8, 1909.

The rule of *ejusdem generis,* that where the particular words of description are followed by general terms the latter will be regarded as referring to things of a like class with those particularly described, is only a rule of construction to aid in arriving at the real legislative intent and does not override all other rules. When the particular words exhaust the genus the general words must refer to words outside of those particularized.

Under § 9 of the Customs Administrative Act of June 10, 1890, c. 407, 26 Stat. 131, 135, providing punishment for making and aiding in false entries, the words "owner, importer, consignee, agent or other person" include a weigher representing the Government, and his acts come within the letter and purpose of the statute.

SECTION 9, chapter 407, Laws of June 10, 1890, 26 Stat. 130-135, known as the Customs Administrative Act, under which defendant was indicted, reads as follows:

"That if any owner, importer, consignee, agent, or other person shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or shall be guilty of any wilful act or omission by means whereof the United States shall be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, affidavit, letter, paper, or statement, or affected by such act or omission, such merchandise, or the value thereof, to be recovered from the person making the entry, shall be forfeited, which forfeiture

shall only apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles of merchandise to which such fraud or false paper or statement relates; and such person shall, upon conviction, be fined for each offense a sum not exceeding five thousand dollars, or be imprisoned for a time not exceeding two years, or both, in the discretion of the court."

The indictment in the first count alleges that the steamship Alice arrived at the port of New York on November 2, 1907, from Greece, having on board eighty cases of cheese, consigned to one Stamatopoulos; that the said cheese was unloaded and an invoice and entry thereof filed with the collector of customs of the port of New York by the said Stamatopoulos; that the defendant was at the time an assistant weigher of the United States in the customs service at the port of New York and engaged in the performance of his duties as such assistant weigher; that it was his duty to weigh accurately the said cheese and make return thereof to the collector of customs, and upon the weight so returned the said entry was to be liquidated; that the said defendant "did knowingly, wilfully and unlawfully make and attempt to make an entry of imported merchandise, to wit, the said eighty cases of cheese, by means of a false and fraudulent practice, by means whereof the United States was to be deprived of the lawful duties or a portion thereof accruing upon the said merchandise;" that he did knowingly, wilfully and unlawfully return the net weight of said cheese as 13,358 pounds, whereas the true weight thereof and the weight upon which the entry should have been liquidated and the duties paid was 17,577 pounds. The second and third counts contain the same statement of facts, but it is averred in the one that the defendant was "guilty of a wilful act and omission, by means whereof the United States was to be deprived of the lawful duties," or a portion thereof, and in the other that he unlawfully made and attempted to make the entry "by means of a false written statement." To this indictment a

demurrer was filed and sustained, the court, after discussing several matters, saying:

"But it is apparent from the allegations of the indictment that the defendant is not in fact any of the persons within the contemplation of section 9 with relation to these particular importations, and cannot be considered either an owner, importer, consignee, agent or other person.

"The defendant Mescall was not making or attempting to make an entry of these goods. According to the charge he was, contrary to his duty, rendering assistance to the importer, who was the 'person' making the entry."

The case is here under the act of March 2, 1907, 34 Stat. 1246, which authorizes a writ of error "direct to the Supreme Court of the United States" in a criminal case wherein there has been a decision or judgment sustaining a demurrer to an indictment, when such decision or judgment is based upon the invalidity or construction of a statute upon which the indictment is founded.

*Mr. Assistant Attorney General Fowler* for the United States:

An entry of goods within the meaning of § 9 of the act of July 24, 1897, embraces the entire transaction from the time the vessel enters port until the importer obtains an entrance of the goods into the body of merchandise in the United States; *United States* v. *Baker,* 24 Fed. Cas. 953; *United States* v. *Cargo of Sugar,* 25 Fed. Cas. 288; *United States* v. *Legge,* 105 Fed. Rep. 930; and every person performing any material act in accomplishing that purpose and violating the statute in any particular is liable to prosecution therefor.

One who is not an importer is not excluded from prosecution because under the rule of *ejusdem generis* the words "other person" exclude those not of the class of importer. 2 Lewis' Suth. Stat. Const., 2d ed., p. 833; 26 Cyc. 610; *State* v. *Corkins,* 123 Missouri, 56, 67; *Bank* v. *Ripley,* 161 Missouri, 126, 131; *Willis* v. *Mabon,* 48 Minnesota, 140, 156; *Winters* v. *Duluth,* 82 Minnesota, 127; *Foster* v. *Blount,* 18 Alabama, 687;

*Misch* v. *Russell,* 136 Illinois, 22, 25; *Webber* v. *Chicago,* 148 Illinois, 313; *Maxwell* v. *People,* 158 Illinois, 248, 253; *Gillock* v. *People,* 171 Illinois, 307; *Matthews* v. *Kimball,* 70 Arkansas, 451, 463; *State* v. *Woodman,* 26 Montana, 348, 353; *Randolph* v. *State,* 9 Texas, 521; *State* v. *Solomon,* 33 Indiana, 450; *Matter of La Société Française,* 123 California, 525, 530; *State* v. *Holman,* 3 McCord (So. Car.), 306; *State* v. *Williams,* 2 Strob. (So. Car.) 427; *Tisdell* v. *Combe,* 7 A. & E. 788, 792, 796; *Young* v. *Grattridge,* 4 Q. B. Cases, 166; *Reg.* v. *Doubleday,* 3 E. & E. 500.

*Mr. George F. Hickey* for defendant in error:

Section 9 of the Customs Administrative Act is a penal statute and should be construed strictly. *United States* v. *Seventy-five Bales of Tobacco,* 147 Fed. Rep. 127; *Andrews* v. *United States,* 2 Story, 202; *United States* v. *Wiltberger,* 5 Wheat. 76; *United States* v. *Eighty-four Boxes of Sugar,* 7 Pet. 453; Sutherland on Stat. Const., § 353.

In expounding a penal statute the court will not extend it beyond the plain meaning of its words. *United States* v. *Morris,* 14 Pet. 464.

Such a statute should be construed according to the manifest import of the words.

If the statute is ambiguous, the construction adopted should be that most favorable to the accused. *The Schooner Enterprise,* 1 Paine, 32.

Under § 9 indictments may not be brought against others than owners, importers, consignees, agents or other persons of the same class.

The entry contemplated undoubtedly is the entry originally made by the importer, or some one on his behalf, as required by the rules and regulations of the customs service. This was the entry alluded to in the act of June 22, 1874, § 21, 18 Stat. 190, and it was the entry provided for, regulated and defined by §§ 2785–2790, Rev. Stat. *United States* v. *Seidenberg,* 17 Fed. Rep. 227.

No one but the importer or some one representing him, has a right to enter goods at the custom house. *Harris* v. *Dennie*, 3 Pet. 292; *United States* v. *One Silk Rug,* 158 Fed. Rep. '974; *United States* v. *Ninety-nine Diamonds,* 132 Fed. Rep. 579; 139 Fed. Rep. 961.

It seems to us that the principal dispute that can arise in the case at bar is as to the meaning of the words "or other person."

The decision in the case that the words "or other person" mean some one of the same general class as those described by the preceding words, seems to be correct. It is certainly supported by the great weight of authorities. *United States* v. *1,150½ Pounds of Celluloid,* 82 Fed. Rep. 627.

The words "or other person" cannot be construed to mean "or other person whosoever."

For cases in support of this rule of construction, known as Lord Tenderden's Rule, see 21 American & Eng. Ency. of Law, title "Other," 1012; *In re Davidson,* 4 Fed. Rep. 509; *Crystal Spring D. Co:* v. *Cox,* 49 Fed. Rep. 555; *Newport News Co.* v. *United States,* 61 Fed. Rep. 488; *Crowther* v. *Fidelity Ins. Co.,* 85 Fed. Rep. 41; *Alabama* v. *Montague,* 117 U. S. 602; *State* v. *McGarry,* 21 Wisconsin, 502. Sedgwick on Const. of Stat. 361, states the rule as follows:

"Where general words follow particular words, the rule is to construe the former as applicable to the persons or things particularly mentioned."

The rule that general words will be restrained to things of the same kind with those particularized, has been applied in numerous cases. *East Oakland* v. *Skinner,* 94 U. S. 255; *White* v. *Ivey,* 34 Georgia, 186; *McIntyre* v. *Ingraham,* 35 Mississippi, 25; *Bucher* v. *Commonwealth,* 103 Pa. St. 528; *Matter of Hermance,* 71 N. Y. 481; *Renick* v. *Boyd,* 99 Pa. St. 555; *People* v. *N. Y. R. Co.,* 84 N. Y. 565; *Sullivan's Appeal,* 77 Pa. St. 107; *People* v. *Richards,* 108 N. Y. 137; Sutherland on Stat. Const., §§ 268, 277.

MR. JUSTICE BREWER, after making the foregoing state-ment, delivered the opinion of the court.

It appears that the trial court sustained the demurrer on the ground that, as to the offense charged, the statute, prop-erly construed, does not include the defendant. The case is, therefore, one which may be brought to this court. *United States* v. *Keitel*, 211 U. S. 370. But our inquiry is limited to the particular question decided by the court below. *Id.* 398.

Counsel for defendant invokes what is sometimes known as Lord Tenderden's Rule, that where particular words of description are followed by general terms the latter will be regarded as referring to things of a like class with those par-ticularly described—*ejusdem generis*. The particular words of description, it is urged, are "owner, importer, consignee, agent." The general term is "other person," and should be read as referring to some one similar to those named, whereas the defendant was not owner, importer, consignee, or agent or of like class with either. He was not making or attempt-ing to make an entry. He represented the Government, and, contrary to his duties, was rendering assistance to the con-signee who was making the entry. But, as said in *National Bank of Commerce* v. *Ripley*, 161 Missouri, 126, 132, in refer-ence to the rule:

"But this is only a rule of construction to aid us in ar-riving at the real legislative intent. It is not a cast-iron rule, it does not override all other rules of construction, and it is never applied to defeat the real purpose of the statute, as that purpose may be gathered from the whole instru-ment. . . . Whilst it is aimed to preserve a meaning for the particular words, it is not intended to render meaningless the general words. Therefore, where the particular words exhaust the class, the general words must be construed as embracing something outside of that class. If the particular words exhaust the *genus* there is nothing *ejusdem generis* left, and in such case we must give the general words a meaning

outside of the class indicated by the particular words or we must say that they are meaningless, and thereby sacrifice the general to preserve the particular words. In that case the rule would defeat its own purpose."

See also *Gillcock* v. *The People*, 171 Illinois, 307, and the cases cited in the opinion; *Winters* v. *Duluth,* 82 Minnesota, 127; *Matthews* v. *Kimball,* 70 Arkansas, 451, 462. Now the party who makes an entry, using the term "entry" in its narrower sense, is the owner, importer, consignee or agent, and it must be used in that sense to give any force to the argument of counsel for defendant, but used in that sense the term "other person" becomes surplusage. In § 1 of chap. 76, Laws of 1863, 12 Stat. 738, is found a provision of like character to that in the first part of the section under which this indictment was found, but the language of the description there is "owner, consignee or agent." This was changed by § 12, chap. 391, Laws 1874, 18 Stat. 188, to read "owner, importer, consignee, agent, or other person," and that description has been continued in subsequent legislation. Evidently the addition in 1874 of the phrase "other person" was intended to include persons having a different relation to the importation than the owner, importer, consignee or agent. Congress was broadening the scope of the legislation and meaning to reach other persons having something to do in respect to the entry beyond that which was done by the owner, importer, consignee or agent, or else the term "other person" was a meaningless addition. Now the defendant was a person, other than the owner, importer, consignee or agent, by whose act the United States was deprived of a portion of its lawful duties. His act comes within the letter of the statute as well as within its purpose, and the intent of Congress in the legislation is the ultimate matter to be determined.

The fact that he could not be punished in all respects as fully as the owner, in that he had no goods to be forfeited, is immaterial. *United States* v. *Union Supply Company,* decided this day, *post,* p. 50.

We are of opinion, therefore, that the trial court erred in sustaining the demurrer. The judgment is reversed and the case remanded for further proceedings.