## NESBIT v. RICHARDSON et al. (No. 6499.)

(Court of Civil Appeals of Texas. San Antonio. March 16, 1921. Rehearing Denied April 13, 1921.)

**1. Release** ⊜⟳30—**Contract held to release individual notes.**

A contract of release of liabilities entered into between a group *held* to include a release of individual personal notes from one to another, and not to imply only the release of such claims as were held by the signers collectively or as a group.

**2. Appeal and error** ⊜⟳1008(1)—**Implied findings not disturbed.**

The appellate court cannot disturb the implied findings of the lower court clearly put in issue by the evidence.

**3. Appeal and error** ⊜⟳1058(3)—**Harmless to exclude testimony already received in substance.**

Exclusion of testimony of two witnesses was rendered harmless, where it was received by the court from other witnesses, if not in substance from the witnesses mentioned.

**4. Appeal and error** ⊜⟳742(3)—**Assignment that court erred in not sustaining plea in abatement to cross-action insufficient in view of proposition.**

An assignment of error, "The court erred in overruling and in not sustaining plaintiff's

plea in abatement to defendants' cross-action," was insufficient when supported only by the proposition that, "It is improper to permit a cross-action by defendants' to be maintained on account of alleged improper filing of lis pendens notice in a suit filed by plaintiff on a note disconnected with plaintiff's cause of action, especially where the alleged cross-action is unliquidated"; there being no argument under the assignment, and the statement simply referring the court generally to all the pleadings in the case.

**5. Evidence ⬤⟶471(29)—Testimony that instrument expressed intention held objectionable as mere conclusions.**

Testimony of a witness that "the instrument clearly expresses the intention, which was to settle all controversies of every character which they had against that estate," was objectionable as being a mere conclusion of the witness.

**6. Appeal and error ⬤⟶1051(4)—Testimony consisting of mere conclusion as to writing held harmless where construction was for court.**

A mere conclusion of witness that an instrument clearly expressed the intention of the parties and was to settle all controversies which they had against an estate was harmlessly admitted in evidence, where the instrument was unambiguous and its construction for the court.

Appeal from District Court, Dimmit County; J. F. Mullally, Judge.

Suit by Z. T. Nesbit against Mary I. Richardson and another, as executrix and as executor respectively of the estate of Asher Richardson, deceased. Judgment for defendants, and plaintiff appeals. Affirmed.

B. W. Teagarden, of San Antonio, for appellant.

N. A. Rector, of Austin, and Vandervoort & Johnson, of Carrizo Springs, for appellees.

SMITH, J. This is the second appeal of this cause. Richardson v. Nesbit, 204 S. W. 689.

Z. T. Nesbit, as plaintiff below, brought this suit against Mary I. and Littleton V. Richardson, as executrix and executor, respectively, of the estate of Asher Richardson, deceased, upon a note for $2,700, dated March 6, 1912, executed by Asher Richardson and payable to the order of Nesbit 60 days after date. The suit was defended upon the sole ground that the note was satisfied and released under and by virtue of the terms of a certain contract, or release, dated August 21, 1915, and executed by Nesbit and 14 others. This contract, after setting out the names of the parties thereto, provides that—

"* * * For and in consideration of thirty-seven thousand five hundred dollars ($37,500.-00) to us in hand paid by Mary I. Richardson and Littleton V. Richardson, as independent executors of the estate of Asher Richardson,

deceased, have granted, sold and conveyed, and by these presents do grant, sell and convey unto said Mary I. Richardson and Littleton V. Richardson, as independent executors of the estate of Asher Richardson, deceased, both of Dimmit county, Texas, all of the following described tracts or parcels of land. situated in Dimmit county, Texas, to wit: (Here follows description in detail of about 19,000 acres of land, which is unnecessary to copy.)

"Including all of the lands covered by the contract by Asher Richardson and W. A. H. Miller, dated the 21st of March, A. D. 1908, and the various extensions and modifications of said contract, whether said lands are specifically described above or not, together with all of our joint and several rights, title and interest in and to all moneys and vendor lien notes received by Asher Richardson from third parties in part purchase of said lands under and by virtue of the aforesaid contract between him and W. A. H. Miller, whether said notes were given for acreage property or subdivision thereof into town lots or suburban lots, and together with all subdivisions of said acreage property made under and by virtue of said contract between Asher Richardson and W. A. H. Miller and the extensions and modifications thereof, and all other indebtedness whether evidenced by note or otherwise from third parties in part purchase of said lands or subdivisions thereof, including the townsite of Asherton and all subdivisions of said land, whether expressly referred to herein or not.

"And we also hereby transfer, assign and release to Mary I. Richardson and Littleton V. Richardson, as independent executors of the estate of Asher Richardson, deceased, all claims and demands of every kind or character for property, debt or damages, which we now have or which may hereafter accrue to us, whether now known or unknown to us, against the estate of Asher Richardson, deceased, growing out of or based upon the contract of March 21, 1908, or the various extensions and modifications thereof, between Asher Richardson and W. A. H. Miller, both deceased, or otherwise, it being the intention of the parties to this instrument to make it a full and complete accord and satisfaction, by compromise and settlement of all differences, controversies, debts, claims and causes of action of every kind or character now existing or that may thereafter accrue in favor of either party against the other, jointly or severally, with reference to the property, real, personal or mixed, covered by said contract and its various extensions and modifications or other contracts and obligations, whether in writing or not, now existing between us and of all other claims or demands of every kind or character of the parties to this instrument by or against the estate of Asher Richardson, deceased, except, however, the notes given by the individuals herein in part purchase of some of the lands covered by said contract, which. notes are not to be affected by this instrument, but are to remain valid obligations in the hands of the holders thereof against the parties executing said notes.

"To have and to hold the above-described premises, together with all and singular the

,rights and appurtenances thereto in any wise belonging to the said Mary I. Richardson and Littleton V. Richardson, as independent executors of the estate of Asher Richardson, deceased, his heirs or assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever· defend all and singular the said premises unto the said Mary I. Richardson and Littleton V. Richardson, as independent executors of the estate of Asher Richardson, deceased, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through, or under either of us.

"Nevertheless, provided, that it is not intended by this agreement, to, nor shall. this agreement prejudice the rights of the parties unto any lands or town lots which were purchased by them from Asher Richardson in his lifetime and which were paid for by them and to which they received deeds from Asher Richardson and which deeds have heretofore been recorded in the deed records of Dimmit county, Texas; nor shall this agreement prejudice the right of A. M. McElwee to establish by proper proof that he purchased from Asher Richardson eighty (80) acres of land out of section 56, in Dimmit county, Texas, from Asher Richardson ·in his lifetime and paid him the consideration therefor."

Appellees reconvened and by cross-action sought to recover of appellant damages alleged to have accrued to them on account of the improper filing by appellant of lis pendens notice in this suit.

The cause was tried before the court without a jury, and resulted in a judgment in favor of the Richardsons against Nesbit in the main suit and for $1 damages in the cross-action. Nesbit appeals. The lower court filed no findings of fact or conclusions of law.

It is the contention of appellant that the contract above set out did not apply to or release his note, but covered only such claims as were held by all the signers thereof, collectively as a group; that if it is not obvious from the terms of the contract that it excluded his note from the matters therein released, then the language of the contract is ambiguous and evidence should be received to explain the ambiguity; that it was the intention of the parties to exclude appellant's note from the operation of the release, and the omission of a provision effecting such intention was the result of a mutual mistake of the parties; that appellant was induced to execute the release because of the fraudulent representation of appellees' attorney that the release by its terms did in effect exclude appellant's note from the operation thereof.

[1] Upon the former appeal the question, of whether or not the claims described in the contract as "all other claims or demands," .etc., embraced the note in suit, was squarely .raised, and decided against appellant. The fact that the question may have been there raised by an effort to apply ·the principle of ejusdem generis did not interfere with the thoroughness of the decision, or modify its complete effect, as appellant here urges. Appellant makes the point, and supports it with much ingenuity, that the use of the words, "we," "us," and "parties," in describing the parties whose claims were to be affected by the contract, implied the release of only such claims as were held by the signers collectively, or as a group, and excluded such claims as were held by the individual signers. This contention is squarely in conflict with the established rule, however. Coffin v. Douglass, 61 Tex. 406, and authorities there cited. Appellants also urge that the intention to exclude his claim was emphasized by the fact that in one instance the term "jointly and severally," was used in the contract to describe a particular class of claims to be affected by the release. We think, however, that the fact that the exception was made serves to preclude, rather than effectuate, the exemption of any other separate or individual claim, such as appellant's. So is also the effect of the last clause in the contract, which singles out and affirmatively excludes from the operation of the release certain individual rights of McElwee, one of the signers. It seems to us that, if it had been intended to also exempt the individual claim of Nesbit, it would have been affirmatively so stated in the contract.

We see no reason to modify the language or effect of the former opinion of this court, from which we quote the following, which is just as ·applicable to appellant's present contention as it was to the rule of ejusdem generis:

"The words of the compromise agreement are plain and unambiguous, and the language broadly describes. the subject of compromise as 'all other claims or demands of every kind or character of the parties to this instrument by or against the estate of Asher Richardson, deceased.' The words could not have been made plainer or more comprehensive, and are undoubtedly broad enough to embrace the note forming the basis of this, suit. The rule of ejusdem generis cannot be applied to the words quoted. That rule is applied to the construction of statutes, wills, and other instruments, and is that, where general words follow an enumeration of persons or things by words of a particular and specific meaning, such general words are not to be construed in their · widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. In this case, however, the words are too plain, precise, and specific to be called general, or the objects described to be construed to be of the same kind or class as those mentioned in connection with the Richardson-Miller contract. The language is as explicit and specific as that used in describing the claims arising out of the contract. The first are described. as 'all claims or demands of every kind or character for property, debt, or damages, which we now, have. or which .may hereafter accrue to us, '

whether known or unknown to us, against the estate of Asher Richardson, deceased, growing out of or based upon the contract of March 21, 1908.' This is followed by other specific words covering everything that could arise from that contract, and it is clear that no other words were necessary to describe those claims and the words, 'all claims or demands of every kind or character of the parties to this instrument by and against the estate of Asher Richardson, deceased,' must necessarily have been used to describe all claims not embraced in or arising from the contract described."

The first to the eight assignments of error, inclusive, are accordingly overruled.

[2] By his ninth and tenth assignments of error appellant attacks the judgment upon the grounds that the evidence, or at least the preponderance of the evidence, shows that appellant was induced to sign the release in question by the fraudulent representations of appellees' attorney that it was not intended that said release should cover, and that it did not cover, the note sued on, and that if in fact the release did include the note, it was done through the mutual mistake of the parties. These matters were clearly put in issue by the evidence, however, and we would not be warranted, if so disposed, in disturbing the implied findings of the lower court against appellant thereon. Those assignments are overruled.

[3] Appellant complains in his eleventh and twelfth assignments of error of the exclusion of certain testimony of two witnesses offered upon the trial. These assignments will be overruled. The testimony said to have been excluded was received by the court from other witnesses, if not in substance from the witnesses mentioned, and the error complained of, if error at all, was rendered harmless.

[4] Appellant's thirteenth assignment of error is that, "The court erred in overruling and in not sustaining plaintiff's plea in abatement to defendants' cross-action," and the only proposition submitted thereunder is that—

"It is improper to permit a cross-action by defendants to be maintained on account of alleged improper filing of lis pendens notice in a suit filed by plaintiff on a note disconnected with plaintiff's cause of action, especially where the alleged cross-action is unliquidated."

Obviously, the assignment is insufficient as being too general when supported by only the one proposition quoted. The statement under this assignment simply refers the court generally to all the pleadings in the case, and accordingly it is likewise insufficient. There is no argument under this assignment, and we are left entirely to conjecture to determine upon what particular theory, or for what particular reason, the ruling complained of is thought to be erroneous. Notwithstanding the general nature of this assignment, however, we have examined appellees'

cross-action, and regard it as good against a general demurrer, and the lower court having found against appellant on the facts, we overrule the assignment.

[5, 6] Appellant also complains of the admission of the testimony of the witness Floyd McGown that—

"The instrument clearly expresses the intention, which was to settle all controversies of every character which they had against that estate." —

While we think this testimony was objectionable as being a mere conclusion of the witness, it is obvious, in view of the conclusions reached in this opinion, that the error was in no sense harmful, and we therefore overrule the fourteenth assignment, complaining of this error.

We find no error warranting a reversal of the judgment of the trial court, which is accordingly affirmed.

Affirmed.