Wesley R. LUSINGER et al., Appellants,

v.

Linda PHILPOTT, Appellee.

No. 11312.

Court of Civil Appeals of Texas.

Austin.

June 9, 1965.

Rehearing Denied June 30, 1965.

Day, Dio & Fields, Jean Day, Port Lavaca, for appellants.

Guy Allison, Corpus Christi, for appellee.

ARCHER, Chief Justice.

This suit arose over an automobile-motor scooter collision. Based on the jury verdict, the court entered judgment for defendant, Linda Philpott, from which verdict and judgment the plaintiffs, Wesley R. Lusinger and Curtis Scott Lusinger, bring this appeal.

The appeal is based on two points and are:

"First Point: The court erred in admitting testimony of witness Guy Burrow on his direct examination, to the effect that an alleged witness, Joe Bible, had stated to him after the accident that he had seen the accident and that '* * * the girl came up to the intersection there, stopped or slowed down, he wasn't sure, proceeded to cross the intersection, and he did make that statement: "Before the motor scooter reached the crest of the hill, they was going too fast" * *. That's all he would say,' over the objection that such statement was hearsay testimony."

Second Point: The trial court erred in admitting, as part of the res gestae, witness Guy Burrow's testimony that Joe Bible told him, '* * * the girl came up to the intersection there, stopped or slowed down, he wasn't sure, proceeded to cross the intersection, and he did make that statement: "Before the motor scooter reached the crest of the hill, they was going too fast" * * *. That's all he would say,' over plaintiffs' objection that defendant had not shown that such evidence was an exception to the hearsay rule."

This automobile-motor scooter accident occurred on November 10, 1963, in Marble Falls, Texas at the intersection of Broadway and Avenue I in the late afternoon.

Avenue I is a paved street 20 feet wide and runs north to south through the main business district of Marble Falls and Broadway is a gravel street running east to west and intersects Avenue I at approximately

198 feet from the crest of a hill south of Broadway.

All defendants except Linda Philpott were dismissed from the case on motion of plaintiff.

Scott Lusinger was a passenger on the motor scooter which was being operated by Dayton Houy on Avenue I. The day was clear and the streets were dry.

Linda Philpott was called by the plaintiff under the adverse witness rule and testified that she was 17 years old, in the 12th grade, resided with her parents in Marble Falls, had a driver's license, and was driving an automobile belonging to Marble Falls Auto Repair and Motor Company, having permission to do so; that she had been to a church meeting and at 5 o'clock p. m. she left the church on Broadway intending to go to Highway 281, and had traveled about 3 or 4 blocks before she got to Avenue I and was traveling at about 20 miles per hour as she approached Avenue I. She looked to the right to see if there was any oncoming traffic twice and saw none, and did not blow her horn or completely stop on entering Avenue I, but slowed to about 5 miles per hour and saw the scooter just immediately before the wreck a distance of 5 or 6 feet, and applied her brakes.

The witness identified a picture and a drawing of the intersection as constructed, and placed her car in position on the diagram, and stated that the motor scooter struck her automobile above the right front wheel.

Dayton Houy testified that he was 16 years old, lived with his parents in Marble Falls and attended high school; that he was the owner of the motor scooter and visited Scott Lusinger, and they concluded to ride around; that he had been operating motor scooters about 2 years. The witness further testified as to the accident and described the streets and area, that as he topped a hill looking north down Avenue I toward Broadway he could see 25 or 30 yards; that he saw the automobile at a distance of 15 to 20 yards off Avenue I on the dirt street going west to east, and thought the car was going to stop, and the next time he saw it it was right in front of him and he was about to hit it; that he did not have time to apply his brakes, but hit the car and was thrown off the scooter into the windshield, and detailed his injuries which were extensive; that he had visited Scott Lusinger who was also injured with broken legs, arm and foot injuries.

The witness Houy testified that the automobile was going between ten, twenty, twenty-five miles somewhere around there; that he did not see the car stop.

Curtis Scott Lusinger testified that he lived with his parents and was 16 years old and was a sophomore in school, and worked at his father's grocery store and did other duties around the house.

This witness described the trip on the motor scooter and that they were traveling between 25 and 30 miles per hour just before the occurrence of the accident; that he did not see the car driven by Linda Philpott before the actual collision, and described the injuries he received which we do not recite in full since the points of error are directed to other phases of the trial proceedings and not to the extent of the injuries.

Point No. 2 is directed to the admission of testimony of Guy Burrow, called by the defendant. Mr. Burrow testified that he was a deputy sheriff of Burnet County, that on November 10, 1963 he investigated an accident between an automobile driven by Linda Philpott and a motor scooter operated by Dayton Houy and Scott Lusinger as a passenger; that he knew Dayton and had seen him in both scooters and automobiles and had warned him about speeding. This was admitted in impeachment of Dayton Houy who had testified that he had not been warned or been stopped.

Mr. Burrow on re-direct examination testified that he arrived at the scene about

five or ten minutes after the accident happened, as follows:

"Q OK. Now, immediately thereafter, did anyone present themselves to you as a witness to this accident?

A Someone. Of course, there was a lot of people around. Someone came up and said that Mr. Joe Bible had seen the accident.

Q And I'll ask you if Mr. Bible, right then and within a few minutes after you arrived—within a few minutes after the accident happened—volunteered anything to you as to how fast the motor scooter was going at the time of the accident?

MR. FIELDS: Wait a minute, Your Honor. I object to Counsel going into something he knows is objectionable and not admissible for this jury to consider.

MR. ALLISON: We offer it, Your Honor, as part of the res gestae, having been shown to have occurred within ten or fifteen minutes of the occurrence of the event, having been shown to be, at least in part, a voluntary witness presenting himself, and I have just now asked him if the man said anything to him about how fast the scooter was going.

MR. FIELDS: Your Honor, it was hearsay, rankest kind of hearsay, and the man is right there in Marble Falls now and can be brought on, put on that witness stand—

MR. ALLISON: But he's just out of the hospital, Your Honor, and can hardly answer. Counsel knows that, he talked to him yesterday.

MR. FIELDS: But I'm not trying to put on anything he's not here testifying to, Your Honor.

MR. ALLISON: We offer it as res gestae, as exception to the hearsay rule, having occurred within ten or fifteen minutes after the accident, being relatively unsolicited remark made to this officer at the time and soon after the time of the accident.

THE COURT: All right. The objection is overruled.

MR. ALLISON: What did Mr. Bible tell you with relation to the speed of the motor scooter, please, Mr. Burrow?

THE COURT: Just a minute.

MR. FIELDS: I didn't have time to have the Court Reporter note my exception.

THE COURT: All right.

MR. ALLISON: What was it Mr. Bible told you about how fast the motor scooter was going?

THE WITNESS: Well, Mr. Bible, without any prompting—I asked him if he saw the accident, he said 'Yes, sir, I did. The girl slowed down'—

MR. FIELDS: Your Honor, he is elaborating on the question. The question was: Did he say how fast was the motor scooter going. I am asking the Court to instruct the witness to answer the question asked, restraining himself from hearsay evidence not admissible in this—

MR. ALLISON: I'll change the question. What did Mr. Bible tell you?

MR. FIELDS: Now you'r just giving him unlimited—

MR. ALLISON: Judge, he knows it is admissible. He's gotten it in so many—

MR. FIELDS: Wait just a minute. I don't know any such thing. I'm willing to go to the library with you any minute.

THE COURT: Gentlemen, I am admitting this testimony as part of the res gestae."

Appellant objected to the testimony on the ground that it was hearsay and not a part of the res gestae, and that there was no testimony showing the amount of time that elapsed between the accident and when witness Bible made his statement to Mr. Burrow.

Appellee takes the position that the testimony was hearsay but was admissible under the res gestae exception to the hearsay rule, and that the question of the admission of evidence as a part of the res gestae must be determined in the first instance by the trial court and cites Southern Surety Co. v. Weaver, 273 S.W. 838 (Comm. of App., Sec. A, opinion adopted by the Supreme Court). McCormick and Ray, Tex.Evid., p. 544, First Edition.

The case was submitted to the jury on special issues and the jury found:

"(1) That Linda Philpott did not fail to keep a proper lookout.

(2) That Linda Philpott did not fail to make such an application of the brakes on the auto as would have been made by a person of ordinary prudence. * * *

(3) That Linda Philpott was not operating her auto at a rate of speed in excess of that speed at which an ordinarily prudent driver would have operated the same. * * *

(4) That the auto and the motor scooter had not entered the intersection at approximately the same time.

(5) That it was not negligent for Linda Philpott to fail to sound the horn of the auto immediately before entering the intersection.

(6) That Dayton Houy failed to keep such control of the motor scooter he was operating as a person of ordinary care and prudence would have had and kept under the same or similar circumstances.

(7) That such failure was a proximate cause of the collision.

(8) That such failure was the sole proximate cause of the collision.

(9) That prior to November 10, 1963, Dayton Houy was not a negligent driver.

(10) That Curtis Lusinger failed to keep a proper lookout for his own safety, but that such failure was not a proximate cause of the collision."

■ Based on the jury verdict the court entered a take nothing judgment. We believe the court was justified in entering such judgment.

■ We have set out herein the testimony of Burrow as to statements made to him by Bible and the court was not in error in admitting such under the res gestae rule. McCullon v. McClain et al., Tex.Civ. App., 227 S.W.2d 333, n. w. h.

The statements were made by Bible within a few minutes of the accident, on the scene and in such close proximity to the actual occurrence, and were spontaneous. Knapik v. Edison Bros., Inc., Tex. Civ.App., 313 S.W.2d 335, er. ref.

Even if it was error for the trial court to admit the testimony of Burrow regarding the declarations, such was not reasonably calculated to cause and did probably cause the entry of an improper judgment in this case.

■ The admission of the testimony which was cumulative of testimony to the

same effect by other witnesses does not require a reversal. Lynch Oil Co. v. Shepard, Tex.Civ.App., 242 S.W.2d 217, er. ref.; Rule 434, Texas Rules of Civil Procedure.

The defendant, Linda Philpott, testified that as she approached the intersection she was going about 20 miles per hour, and was going very slow as she entered the intersection; witnesses testified that Linda's car left very little skidmarks, 4 to 5 feet in length.

The evidence is that the motor scooter was going 25 to 35 miles per hour. Houy testified that he saw the car when it was 15 to 20 yards from the intersection, turned and looked away and did not look again until he was right on top of the car, and that he probably could have stopped if he had watched the car and not looked off.

There was substantial evidence in the record outside of the evidence concerning the declaration to support the jury's finding that the defendant was not negligent, and that plaintiff Dayton Houy was negligent and that his negligence was the sole proximate cause of the collision. Texas Employers' Ins. Ass'n v. Henthorn, Tex. Civ.App., 240 S.W.2d 392, er. ref., n. r. e.

We have given careful consideration to the points of error assigned by appellant, and to the authorities but conclude that there is no reversal error shown.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice (concurring).

In order to be admissible as a part of the res gestae, declarations of persons present at the scene of the incident in suit must conform to the opinion rule. Knapik v. Edison Bros., Inc., cited by the majority.[1] The statement of Mr. Bible that "they was going too fast" is a double conclusion.

When appellant objected to this statement on the ground that it was hearsay it became incumbent on appellee to establish its admissibility under some exception to the hearsay rule. In my opinion, he failed to bring it within the res gestae rule for the reason stated.

I concur since I believe the error in admitting this evidence was harmless under Rule 434, T.R.C.P.

1. 2 Texas Law of Evidence, McCormick and Ray, 2nd Ed., Sec. 1406, is critical of this requirement.